IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLIFFORD SAM GIBBONS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 15 C 5352 |
| MONY LIFE INSURANCE CO. and DISABILITY MANAGEMENT SERVICES, INC., | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Clifford Gibbons alleges that he has not received certain benefits owed to him under his disability insurance policy. He has sued MONY Life Insurance Company, the issuer of the policy, and Disability Management Services, Inc. (DMS), the policy's administrator. In a prior order, the Court dismissed as time-barred Gibbons' claims for negligence and reformation. His remaining claims against both defendants are for breach of contract and for a declaratory judgment regarding his entitlement to certain benefits. He also asserts a claim against DMS for intentional infliction of emotional distress based on DMS' allegedly abusive conduct following Gibbons' benefits request.

Gibbons became disabled as a result of two heart attacks he suffered in 2013, and a pivotal issue in connection with the breach of contract and declaratory judgment claims is whether the disability resulting from Gibbons' heart attacks is "due to" an "injury," as opposed to a "sickness," under the terms of his insurance policy. Gibbons concedes that his remaining claims cannot succeed if the Court determines that his

disability was due to sickness. Before the parties engage in extensive discovery regarding those claims, Gibbons has moved for partial summary judgment on the issue to allow the Court to address this threshold legal question. For the reasons discussed below, the Court concludes that, under the terms of his policy, Gibbons' disability was due to "sickness." The Court thus denies Gibbons' motion for summary judgment.

## Background

Gibbons' primary disability insurance policy provides benefits through age 65, but pursuant to an attachment or "rider" to the policy entitled "Lifetime Benefit Period Extension," his benefits continue beyond age 65 and throughout his lifetime if certain conditions are met. In particular, the rider provides:

> **Lifetime Benefit** – We will extend the Benefit Period of this Policy and pay to you the monthly income benefit under this rider if, while this Policy is in force:
>
> (a) an Incapacity, as defined in this Policy, due to Injury commences prior to your Age 65, or
>
> (b) an Incapacity, as defined in this Policy due to Sickness commences prior to your Age 60,
>
> and continues uninterrupted from its Onset Date. These monthly payments will begin at the later of (1) your Age 65, (2) the end of the Excluded Period satisfied by such Incapacity, and (3) the end of this Policy's Benefit Period, and continue for your lifetime or until the Incapacity is interrupted or ends.

Ex. A to Pl.'s Compl. at 12. Under the policy, an "Incapacity" exists when the insured is "not able to perform the substantial and material duties of [his] Regular Occupation" and is under a physician's regular care. *Id.* at 5. The term "Injury" is defined as "accidental bodily injury sustained while this Policy is in force." *Id.* And the term "Sickness" is defined as "sickness or disease which first manifests itself while this Policy is in force."

2

*Id.*

It is undisputed that Gibbons became disabled—that his "Incapacity commenced," to use the rider's terms—in April 2013 when he had a heart attack at age 62. What is in dispute is whether his incapacity is properly classified as being "due to injury" or instead due to "sickness." If the incapacity was due to sickness, as defendants contend, then Gibbons is not entitled to the lifetime benefit extension, because he became disabled after age 60. But if the incapacity was due to injury, as Gibbons contends, then he does qualify for lifetime benefits, because the disabling injury occurred prior to age 65.

In arguing that Gibbons' disabling heart attack was due to sickness (and not injury), defendants point out that Gibbons' heart surgeon diagnosed him with coronary artery disease and that his disability was thus clearly the result of a diagnosable disease or "sickness" under the terms of his policy. For his part, Gibbons asserts that work-related stress, not coronary artery disease, induced the heart attack. To obviate (at the parties' request) the need for extensive discovery at this juncture regarding the underlying cause of Gibbons' heart attack, the Court asked the parties to assume for purposes of argument that Gibbons was correct on the causation issue and limit the scope of their briefing on Gibbons' summary judgment motion to the following question: whether an insured who is disabled by a heart attack that is indisputably induced by stress is, under the terms of Gibbons' policy, disabled due to injury or due to sickness?

In ruling on Gibbons' motion, as just indicated, the Court assumes the truth of his assertions concerning the work-related stressors that he says induced his heart attack. In particular, Gibbons points to three "significant and unusually stressful events" that

3

contributed to a stressful work environment in the spring of 2013, prior to his first heart attack. Pl.'s Resp. to Defs.' Stmt. of Add'l Mat. Facts ¶ 21 (citing Ex. B to Defs.' Stmt. of Add'l Mat. Facts ¶ 13). At that time, Gibbons was working as president of Gibbons & Company, a Washington, D.C. lobbying firm. He explains that the shutdown of the Federal government and Congress' failure to pass routine appropriations bills in the spring of 2013 adversely affected government funding for one of the firm's significant clients. As a result, Gibbons had to work "around the clock" in a highly stressful environment to assist this particular client with fundraising. *Id.* During the same time period, a foreign government froze the assets and bank accounts and confiscated the products of another of Gibbons' major clients. This development required Gibbons to meet with senior United States government officials and foreign ambassadors to attempt to retrieve the hundreds of millions of dollars at stake for the client. Also during that time, a third client faced problems with business operations related to regional trade in another foreign country, a problem which Gibbons says would require quick implementation of strategies to resolve. It was in the midst of these three concurrent crises that Gibbons suffered his first heart attack in April 2013.

Following his heart attack, Gibbons underwent heart surgery, including the implantation of two heart stents, and he remained in the hospital's intensive care unit for three days following the surgery. Gibbons returned to work, and to his "relentless work schedule," immediately after leaving the hospital, and he then suffered a second heart attack in June 2013. *Id.* In April 2015, DMS issued a letter to Gibbons advising him that, under the terms of his policy, his heart attack constituted a "sickness" and not an "injury," and that as a result he was not entitled to lifetime benefits under the policy. As

discussed above, Gibbons has moved for partial summary judgment to challenge defendants' interpretation of the policy on this particular point.

## Discussion

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is undisputed that Illinois law governs the substantive issues in this diversity case, and in Illinois, "[t]he construction of an insurance policy's provisions is a question of law." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). In construing the provisions of an insurance policy, courts attempt to ascertain the intent of the parties and the meaning of the words used by "constru[ing] the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Id.* (internal citations omitted). Courts must afford unambiguous terms their "*plain, ordinary, and popular meaning.*" *Id.* (emphasis in original). But words that are "susceptible to more than one reasonable interpretation" are considered ambiguous and must be construed in favored of the insured. *Id.* at 108–109, 607 N.E.2d at 1212.

Unfortunately, the parties do not offer any rationale based on the policy's purpose or context to explain why a disability caused by "injury" should be treated differently than one caused by "sickness." This makes it difficult for the Court to use the purpose of the contract or the parties' intent as lenses through which to assess whether Gibbons' heart attack is more appropriately considered an injury or a sickness. The Court must rely primarily, therefore, on (1) the definitions provided in the policy; (2) the plain meanings of the words "injury" and "sickness," as well those of the words used to define

5

those terms; and (3) other courts' interpretations of similar words in similar policies.

As mentioned above, Gibbons' policy defines "injury" as "accidental bodily injury" and defines sickness as "sickness or disease." Gibbons contends that under Illinois law, "accidental bodily injury" means an "unforeseen or unexpected bodily injury." *Rich v. Principal Life Ins. Co.*, 226 Ill. 2d 359, 373, 875 N.E.2d 1082, 1091 (2007). Because Gibbons' heart attack was unexpected, he argues, it constitutes an accidental bodily injury under the policy. According to Gibbons, this conclusion is supported by an Illinois appellate court's interpretation of an identical disability insurance policy provision in *Carney v. Paul Revere Life Insurance Co.*, 359 Ill. App. 3d 67, 832 N.E.2d 257 (2005). In that case, the court determined that a cardiovascular surgeon's disabling pronator teres syndrome, an elbow condition similar to carpal tunnel syndrome, constituted an "accidental bodily injury" as opposed to a "sickness or disease." *Id.* at 82, 832 N.E.2d at 268–69. The plaintiff's disability in *Carney* was due to an injury, the court reasoned, because the disability was caused by repetitive trauma to the surgeon's arms whenever he performed an operation. *Id.* at 75, 832 N.E.2d at 263. The court found that each instance of repeated trauma constituted a "bodily injury" and that there was otherwise no evidence that his disability had been caused by sickness, defined as "ill health, a disordered, weakened or unsound condition," or disease, defined as "a condition of the living animal or one of its parts that impairs the performance of a vital function." *Id.* at 75–76, 832 N.E.2d at 263 (internal quotation marks omitted) (citing *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill. 2d 23, 45–46, 514 N.E.2d 150, 153 (1987)).

In addition to finding that a "bodily injury" caused the insured surgeon's disability, the court in *Carney* also determined that the injury could be considered an "accidental

bodily injury." In reaching that conclusion, the court reviewed Illinois case law and determined that an accidental injury in Illinois may be "either (1) an injury that is unexpected but may arise from a conscious voluntary act (accidental result) or (2) an injury that is the unexpected result of an unforeseen or unexpected act that was involuntary or unintentionally done (accidental means)." *Id.* at 82, 832 N.E.2d at 268. The development of the surgeon's pronator teres syndrome, the court concluded, was an "accidental result" that arose unexpectedly from his voluntary acts (performing operations), and thus his injury could be classified as an "accidental bodily injury." *Id.* at 82, 832 N.E.2d at 268–69.

Gibbons argues that his disability is like the surgeon's pronator teres syndrome in *Carney* because his heart attack was also an unexpected result caused by repetitive workplace harm (in the form of job-related stress). Thus Gibbons urges this Court to follow the court in *Carney* in concluding that his disability was due to an accidental bodily injury. In the alternative, Gibbons argues that the terms "injury" and "sickness" are ambiguous because the policy fails to indicate specifically whether a stress-induced heart attack qualifies as one or the other; for this reason, he says, the Court should interpret the ambiguous terms in his favor as required by Illinois law. Defendants respond that Gibbons' reliance on *Carney* is misplaced. The court in *Carney* concluded that the plaintiff's disability was an injury, they point out, only after the plaintiff's expert had identified a discrete triggering event for his disability—namely, the repeated trauma caused by the hand motions he performed in the course of his job. Defendants argue that Gibbons, on the other hand, can point to no discrete triggering event for his heart attack and thus his disability cannot be due to any bodily injury.

7

Defendants direct the Court's attention to two cases from this district in which the courts applied Illinois law to determine that the insureds' fatal heart attacks did not constitute accidental bodily injuries within the terms of their life insurance policies. *See Kolowski v. Metro. Life Ins. Co.*, 35 F. Supp. 2d 1059 (N.D. Ill. 1998); *Haley v. Am. Int'l Life Assurance Co. of N.Y.*, 789 F. Supp. 260 (N.D. Ill. 1992). In *Haley*, the plaintiff argued that the decedent's heart attack was an accidental bodily injury because it was a sudden and unforeseeable event. But the court concluded that absent a triggering event, such as a car accident or some other "outside event or trauma," a fatal heart attack is "not an accident within the ordinary, common meaning of the word ['accident']." *Haley*, 789 F. Supp. at 264. Similarly, in *Kolowski*, the court concluded that the decedent police officer's heart attack was not an accidental bodily injury because the plaintiff could point to no unexpected or unforeseen trauma or triggering event. *See Kolowski*, 35 F. Supp. 2d at 1062–63. The court rejected the plaintiffs' claim that the officer's physical exertion at a drug arrest prior to his heart attack constituted such an event. *Id.* at 1063. Even though the drug arrest required the officer to work an 18-hour day, transferring 300 pounds of cannabis by himself into an unheated storage garage during a cold day in Chicago, the court concluded that nothing about that evening "appears to have been unexpected or unforeseen given the everyday rigors and responsibilities of the decedent's job" as a police officer. *Id.* Thus the decedent's workplace exertion prior to his heart attack could not constitute an unforeseen trauma or triggering event, and his heart attack was therefore not an accidental bodily injury. *Id.* The court in *Kolowski* distinguished the case of *Mers v. Marriott International Group Accidental Death*, 949 F. Supp. 1323 (N.D. Ill. 1996), in which the insured's job-induced

8

heart attack was considered an accidental injury. In that case, the insured was an account executive who suffered a heart attack while participating in a Habitat for Humanity project that required him to use a sledge hammer and crow bar to tear down a wall. *Mers*, 949 F. Supp. at 1325. The insured collapsed while engaging in this "strenuous activity," and so his heart attack was clearly triggered by unusual acts of physical exertion. The existence of such a clear and unusual triggering event rendered *Mers* distinguishable. *Kolowski*, 35 F. Supp. 2d at 1063.

It is true that *Kolowski* arose in the slightly different context of a claim for accidental death benefits under a life insurance policy. But the court in that case addressed an issue similar to the one presently before the court: whether, and if so under what conditions, a job-induced heart attack can be considered an accidental bodily injury? The court in *Carney* also cited *Kolowski* favorably in interpreting a disability insurance policy like the one at issue in this case and felt it necessary to distinguish *Kolowski* based on the difference between the surgeon's arm injury in *Carney*, which resulted from his voluntary hand movements, and the heart attack at issue in *Kolowski*, which was not the result of a voluntary act. *Carney*, 359 Ill. App. 3d at 82, 832 N.E.2d at 268. And indeed, Gibbons concedes that in order for a heart attack to be considered an accidental bodily injury, there must be, as the court in *Kolowski* ruled, some unexpected trauma, external force, or event that triggers it. Thus Gibbons admits that "generally, work-related heart attacks are not compensable as accidents under Illinois law" but submits that his case is an "exception to the rule" because his extraordinary level of workplace stress was the unexpected force that triggered his heart attack. Pl.'s Reply at 9.

The Court disagrees with Gibbons that because his heart attack was caused by unusual workplace stress, his case presents an exception to the general rule. Even if the Court were to assume that Gibbons' stress level was unusual or unexpected given his line of work, an assertion that defendants dispute, Gibbons has still not pointed to any discrete, unexpected event that immediately triggered his heart attack. Gibbons has not shown, for example, that he was engaged in any unusual physical exertion on the day of his heart attack like that of the sledge hammer-wielding account executive in *Mers.*

Gibbons maintains that *Carney* stands for the proposition that no discrete triggering event is necessary for harm to qualify as an accidental bodily injury because the injury at issue in *Carney* was the result of an accumulation of repetitive harm over time. Thus, he argues, his heart attack was like the surgeon's injury in *Carney* because it resulted from the accumulated effects of prolonged and extraordinary stress. But the Court disagrees that *Carney* stands for such a proposition. On the contrary, in reaching the conclusion that the plaintiff's disability was due to "bodily injury" as opposed to a "sickness," the court in *Carney* relied specifically on the fact that the disability was the result of repetitive trauma (the surgeon's hand movements), "*each of which* may be classified as an injury." *Carney*, 359 Ill. App. 3d at 76, 832 N.E.2d at 264 (emphasis added). Thus each injury had an immediate and discrete triggering event, and Gibbons' failure to point to such an event in this case undermines his attempt to compare his heart attack to the arm injury at issue in *Carney.*

Indeed, the phrase "accidental bodily injury," as it is normally used, suggests harm caused by a sudden and discrete external force or event—for example, a head

injury resulting from a car accident or a sprained ankle from an awkward landing during a basketball game. The court in *Carney* was thus employing an ordinary understanding of the phrase "bodily injury" when it concluded that the physical damage immediately caused by the surgeon's hand movements constituted such an injury. In contrast, it would be a strange usage of the phrase to categorize an employee suffering from chronic or persistent work-induced emotional stress as suffering repeated "bodily injuries," let alone "accidental bodily injuries." Though there is no doubt that such stress can cause bodily harm, it would be much more natural to say that an employee suffering from chronic stress is "sick," in "ill health," or in a "a disordered, weakened or unsound condition." *Zurich*, 118 Ill. 2d at 46–47, 514 N.E.2d at 160–61 (discussing the plain meaning of "sickness"). The Court concludes, therefore—based on the plain meanings of "accidental bodily injury" and "sickness," as well as the way those terms have come to be understood in Illinois case law—that Gibbons' disability was due to sickness, rather than injury.

The Court also disagrees with Gibbons' argument in the alternative that the policy's operative terms are ambiguous and should therefore be construed in his favor. The fact that there is a dispute about how the policy's language should be applied does not render its language ambiguous. Rather, "the policy employs simple, everyday words that merely require application to unique factual situations." *Zurich Am. Ins. Co. v. Lukacs*, 2013 IL App (1st) 130664-U, ¶ 27, 2013 WL 5987729, at *8. In fact, the Illinois Supreme Court has expressly stated that "injury," when defined in an insurance policy as "accidental bodily injury," is an unambiguous term and that "accidental bodily injury" has acquired an established legal meaning. *Rich*, 226 Ill. 2d at 373, 875 N.E.2d

11

at 1091 (citing *Yates v. Bankers Life & Cas. Co.*, 415 Ill. 16, 19, 111 N.E.2d 516 (1953) and *Carney*, 359 Ill. App. 3d at 82, 832 N.E.2d at 268). Gibbons has not provided alternative, reasonable definitions of "accidental bodily injury" or of "sickness" but has merely argued about how those terms should be applied in this case. Thus, the policy's language is not ambiguous, and as discussed above, the Court has considered the plain and established meanings of those terms in determining that Gibbons' disabling heart attack was due to sickness, not injury.

**Conclusion**

For the reasons stated above, the Court denies Gibbons' motion for summary judgment [dkt. no. 63]. The case is set for a status hearing on September 29, 2016 at 9:30 a.m. for the purpose of addressing how the Court should proceed in this case given this ruling.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 22, 2016

12