# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CLIFFORD SAM GIBBONS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 15 C 5352 |
| MONY LIFE INSURANCE COMPANY and DISABILITY MANAGEMENT SERVICES, INC., | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Clifford Gibbons sued MONY Life Insurance Company and Disability Management Services, Inc. (DMS), for claims arising out of defendants' refusal to pay benefits under Gibbons's disability insurance policy and eventual termination of the policy. Gibbons brought claims of negligence, breach of contract, and intentional infliction of emotional distress, and he requested reformation of the contract and declaratory relief. By October 2016, the Court had either dismissed or awarded summary judgment in favor of defendants on all but one claim. In March 2017, the Court granted defendants' motion to enforce settlement on the final claim. Gibbons has moved for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(1), (3), (4), and (6). For the reasons stated below, the Court denies Gibbons's motion in part and orders an evidentiary hearing to resolve the remaining issue.

## Background

The Court assumes familiarity with the facts of this case and will summarize them only briefly here. The Court also reviews the relevant procedural history.

In October 1990, Gibbons, who is an attorney, purchased a disability insurance policy from MONY. The policy provides benefits through age 65, but an accompanying "rider" authorizes benefits beyond age 65 when certain conditions are met. The rider authorizes coverage for an incapacity due to injury that commences prior to age 65 or an incapacity due to sickness that commences prior to age 60. The term "injury" is defined as "accidental bodily injury sustained while this Policy is in force." Compl., Ex. A at 5. The term "sickness" is defined as "sickness or disease which first manifests itself while this Policy is in force." *Id.*

In April 2013, at the age of 62, Gibbons suffered two heart attacks which left him disabled and unable to work. Later that year, he informed MONY that he would seek coverage under his policy. DMS, the policy's administrator, issued payments until August 2014, when it terminated the policy due to Gibbons's alleged failure to cooperate in the claims investigation. In April 2015, DMS sent a letter to Gibbons indicating that his heart attack constituted a "sickness" and not an "injury" and therefore that he was not entitled to any benefits under the policy.

Gibbons hired attorney Joseph Pellis to represent him in this suit against defendants. Gibbons alleged that MONY was liable for negligence for its failure to exercise ordinary skill and care in procuring lifetime coverage for him (count 1); Gibbons was entitled to reformation of the contract to reflect the parties' intent for lifetime disability coverage (count 2); Gibbons was entitled to a declaratory judgment that his

stress-induced heart attacks were the result of injury and that MONY was required to provide lifetime benefits (count 3); defendants were liable for breach of contract (count 4); and DMS was liable for intentional infliction of emotional distress (count 5).

In December 2015, the Court dismissed as time-barred Gibbons's claims for negligence and reformation. In June 2016, Gibbons filed a motion for partial summary judgment, in which he asked the Court to address whether his "unforeseen and unexpected stress-induced heart attack" qualified as an "injury" under the terms of the policy. Dkt. no. 63 at 1. In his motion, he stated, "It is undisputed that Gibbons had a stress-induced heart attack on April 6, 2013." *Id.* at 2. He acknowledged that, if the Court were to determine that his heart attack qualifies as a "sickness," he would not be entitled to benefits under the rider to his insurance policy because his heart attack did not occur before he reached the age of 60. *Id.* at 3. The "sole remaining issue" would then be the claim for intentional infliction of emotional distress. *Id.* at 6.

In September 2016, the Court denied Gibbons's motion. *See* dkt. no. 84. Both the Court and the parties "assume[d] for the purposes of argument that Gibbons was correct on the causation issue"—that is, that work-related stress and not coronary artery disease caused the heart attack. *Id.* at 3. The Court therefore assumed as true Gibbons's assertions regarding the work-related stressors that supposedly induced his heart attack. The Court determined, however, that under Illinois law, the ordinary meaning of the term "injury" in the context of insurance policies requires a discrete, external, triggering event. Because Gibbons did not point to any such event, the Court concluded that his disability was due to sickness rather than injury. *Id.* at 11. Following this ruling, defendants moved for entry of summary judgment in their favor on counts 3

3

and 4. The Court granted this motion in October 2016.

In December 2016 and January 2017, the parties engaged in discussions regarding settlement. On January 17, 2017, defense counsel Steven Hartmann e-mailed Pellis to reiterate a settlement offer of $40,000 in exchange for dismissal of all claims with prejudice as well as a general release and cancellation of the insurance policy. Two days later, Pellis e-mailed Hartmann stating that his client would accept the offer and requesting a draft settlement agreement. Gibbons maintains that he never authorized Pellis to accept the settlement offer. Pellis has turned over to the Court a copy of his e-mails with Gibbons during this time period regarding settlement for in camera review. These e-mails will be discussed in greater detail later in the opinion.

On February 6, 2017, Pellis informed Hartmann that Gibbons had changed his mind and no longer wished to settle the case. Defendants thereafter filed a motion to enforce what they contended was a binding oral settlement agreement. *See* dkt. no. 97. At a hearing on the motion in March 2017, Gibbons appeared personally and stated that he had never agreed to settle the case. *See* dkt. no. 106. The Court found, however, that Pellis's e-mail, written as Gibbons's agent, constituted a meeting of the minds that created an enforceable agreement. The Court granted the motion to enforce the settlement and ordered dismissal with prejudice of the remaining claim of intentional infliction of emotional dismiss upon defendants' tender of $40,000 to Gibbons. The Court dismissed the case with prejudice on March 24, 2017.

In April 2017, Gibbons filed an appeal from the dismissal order. While that appeal was still pending, Gibbons filed the current motion for relief from judgment under Rule 60(b) in May 2017. After reviewing the parties' briefs, the Court determined that

4

the motion raised a substantial issue but, due to the pending appeal, the Court lacked jurisdiction to issue a ruling on the motion. The Court therefore asked the court of appeals to remand the case. Dkt. no. 142. The Seventh Circuit granted the Court's request for a remand in accordance with Federal Rule of Appellate Procedure 12.1 and Circuit Rule 57. Dkt. no. 146. The appellate court retained jurisdiction of this case and authorized a limited remand for the sole purpose of issuing an order regarding Gibbons's motion under Rule 60(b).

## Discussion

Gibbons has filed this motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(1), (3), (4), and (6). Gibbons requests relief from the Court's partial grant of summary judgment in favor of defendants on counts 3 and 4 and the order enforcing settlement. He argues primarily that the Court's summary judgment ruling constituted an advisory opinion in violation of Article III of the Constitution and that he never authorized Pellis to settle the case.

Rule 60(b) provides six grounds upon which a court may relieve a party from a final judgment, order, or proceeding, four of which are relevant to this case: "(1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Relief under this rule is an extraordinary remedy that is granted only in exceptional circumstances. *Eskridge v. Cook Cty.*, 577 F.3d 806, 809 (7th Cir. 2009). District courts are given broad discretion to deny a motion for relief from judgment. *Mendez v. Republic Bank*, 725 F.3d 651, 657 (7th Cir. 2013).

5

**A.     Summary judgment ruling**

Gibbons first asks for relief from the Court's summary judgment ruling on the ground that it is void. Pl.'s Mot. for Relief from a J. Pursuant to Rule 60(b)(1), (3), (4), (6) (Pl.'s Mot. for Relief from J.) at 5. He argues that the ruling is an impermissible advisory opinion because the Court lacked subject-matter jurisdiction. *Id.* at 2. The Seventh Circuit has held, however, that "lack of subject-matter jurisdiction is not by itself a basis for deeming a judgment void, that is, open to collateral attack" under Rule 60(b). *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000). Therefore Gibbons has no basis for requesting relief from the Court's summary judgment ruling.

Even were the Court to entertain this challenge, Gibbons's argument that the opinion was advisory is incorrect. Article III limits the jurisdiction of federal courts to "cases and controversies" and does not permit courts to issue advisory opinions. *Wisconsin's Envtl. Decade, Inc. v. State Bar of Wis.*, 747 F.2d 407, 410 (7th Cir. 1984). "The difference between an abstract question calling for an advisory opinion and a ripe 'case or controversy' is one of degree, not discernible by any precise test." *Id.* The essential question is whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant judicial action. *See id.* at 411. The parties cannot agree to submit to an advisory opinion and thereby evade this requirement. *Barr v. Mateo*, 355 U.S. 171, 172 (1957).

The Court's ruling on Gibbons's summary judgment motion addressed a specific question of law that was actually in dispute by the two parties. Gibbons argued in his motion that his heart attack was caused by work-related stress and that this clearly qualified as "injury" under the insurance policy. Pl.'s Mot. for Partial Summ. J. and

6

Supporting Mem. of Law at 2. In response, defendants argued that even if work-related stress was the sole cause of the heart attack, this qualified as "sickness" and therefore did not entitle Gibbons to benefits. Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. at 2. The parties thus disagreed regarding the proper interpretation of the terms of the policy. And if defendants were correct, Gibbons's claims under the policy were barred. Because resolution of this issue would determine whether Gibbons was entitled to coverage—and therefore whether defendants were liable for their failure to pay—the parties had concretely adverse legal interests that warranted judicial action.

Gibbons argues that the ruling was advisory because Pellis did not submit, and the Court did not consider, evidence regarding his medical history and the opinion of medical experts, which, Gibbons contends, demonstrates that his heart attacks were not caused by "sickness." Pl.'s Mot. for Relief from J. at 27–28. But this evidence was not relevant to the issue the Court had under consideration. The issue argued by the parties and determined by the Court was "th[e] threshold legal question" of whether, under the terms of the insurance policy, "an insured who is disabled by a heart attack that is indisputably induced by stress is . . . disabled due to injury or due to sickness." *See* dkt. no. 84 at 2, 3. Thus Gibbons, by his own motion, asked the Court only to interpret the terms of the insurance contract and reserved the question of whether he had adequately proved that stress did in fact cause his heart attacks. Courts have repeatedly held that, where terms of a contract are not ambiguous, interpretation of these terms is purely a question of law appropriate for resolution by the court without looking to extrinsic evidence. *Platt v. Gateway Int'l Motorsports Corp.*, 351 Ill. App. 3d 326, 330, 813 N.E.2d 279, 283 (2004); *Omnitrus Merging Corp. v. Ill. Tool Works, Inc.*,

7

256 Ill. App. 3d 31, 34, 628 N.E.2d 1165, 1168 (1993). Evidence of what actually caused Gibbons's heart attack—and opinion testimony on whether stress-induced events qualify as "injury"—would have been irrelevant to a legal determination regarding whether, if the facts were viewed in the light most favorable to Gibbons, he was entitled to be paid under the contract. And the fact that the Court in its summary judgment ruling resolved a question of law that did not require extrinsic evidence does not *per se* render the ruling advisory. The issue was actually in dispute between the parties, and the Court's ruling was necessary for resolution of Gibbons's claims.

For these reasons, the Court denies Gibbons's motion for relief from the summary judgment ruling.

**B.     Order enforcing settlement**

Gibbons next requests relief from the Court's order enforcing the settlement agreement. He argues that he never consented to any settlement, despite Pellis's statements to the contrary. Gibbons contends that he is entitled to relief due to Pellis's mistake, inadvertence, or excusable neglect; or fraud, misrepresentation, or misconduct by opposing counsel. See Fed. R. Civ. P. 60(b)(1) & (3).

**1.     Mistake or excusable neglect**

Gibbons argues that his attorney's acceptance of defendants' settlement offer constitutes mistake or excusable neglect entitling him to relief from judgment. In considering whether an error by an attorney justifies relief under Rule 60(b)(1), the Seventh Circuit has drawn a distinction between inexcusable and excusable neglect. *See Helm v. Resolution Trust Corp.*, 84 F.3d 847, 878 (7th Cir. 1996). Excusable neglect may, in some circumstances, warrant relief from a judgment; inexcusable

8

neglect does not. *Id.* The burden to prove that the attorney's neglect was excusable falls on the party seeking relief from judgment. *Id.* Although the Seventh Circuit has not clearly defined excusable neglect, it has emphasized that the determination is "at bottom an equitable one, taking account of all the relevant circumstances surrounding the party's" error. *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Gibbons has not yet demonstrated that his attorney erred or acted with excusable neglect. He states in his affidavit that he never told Pellis he would settle his claims "for a nuisance sum of $40,000." Pl.'s Mot. for Relief from J., Ex. 2 (Gibbons Affid.) ¶ 10. Pellis told the Court at the hearing on the motion to enforce that Gibbons had consented, and he has reaffirmed this in connection with the present motion. In support of this position, Pellis has provided the Court with copies of the e-mails he exchanged with Gibbons and his wife, Terri, regarding settlement of the case. Pellis submitted the e-mails for in camera review, and thus they have not yet been made available to defendants.

The first question is whether it is appropriate for the Court to consider the e-mails, which involve communications between Gibbons and his wife on the one hand and Pellis on the other. On their face, the communications appear to be privileged. The Court therefore starts with a review of the questions of privilege and waiver.

Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. E. 501; *Doe v. Archdiocese of Milwaukee*, 772 F.3d 437, 440 (7th Cir. 2014).

9

Gibbons asserted only claims under Illinois law. Therefore Illinois law regarding privilege applies to the e-mails. "Where legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by the client or lawyer, unless the protection is waived." *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 30, 981 N.E.2d 345, 355. An implied waiver of privilege occurs, however, "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." *Lama v. Preskill*, 353 Ill. App. 3d 300, 305, 818 N.E.2d 443, 448 (2004).

In his Rule 60(b) motion, Gibbons directly attacks Pellis's statement to the Court that he (Gibbons) had accepted defendants' offer of settlement. By doing so, Gibbons has injected a factual issue into resolution of the motion that requires the Court and the parties to evaluate his otherwise confidential communications regarding settlement. Gibbons has therefore waived his attorney-client privilege with regard to the relevant communications. This waiver extends only to communications between Gibbons, Terri, and Pellis regarding the same subject-matter—i.e., whether to engage in settlement discussions and, later, accept defendants' settlement offer. *See Center Partners*, 2012 IL 113107 at ¶¶ 38–39, 981 N.E.2d 345, 357.

The Court therefore proceeds to summarize certain of the relevant e-mails. On January 15, 2017, Pellis wrote to Gibbons to tell him that defendants had offered to settle the case for $40,000 in exchange for dismissal of the claims with prejudice and termination of the insurance policy. Gibbons responded the same day to say he was not happy with the offer. He stated that he needed 24 hours to consider it and asked

whether he and Pellis could arrange a conference call for the next day that would include his wife, Terri. Pellis responded with a phone number. Terri e-mailed Pellis four hours later to say there was no need "to waste [his] time with another conference call." Needing an answer regarding the settlement offer, Pellis asked Terri to confirm whether she and Cliff were willing to accept the settlement offer. On January 19 around 1:00 PM, Terri responded, "It appears we have no other choice" and told Pellis to "[s]end us the necessary paperwork to sign and enable both parties to move on and officially end the relationship." At 6:09 PM, Pellis e-mailed Hartmann and indicated that Gibbons would accept the offer. At 11:49 PM that same evening, Gibbons e-mailed Pellis regarding the settlement offer. He stated that the "settlement offer is all in your court at this stage"; "[y]our settlement negotiations skills [sic] is all your money"; "I would suggest you give it all you can with this ----- representing MONY/DMS"; "[w]hatever you can best negotiate is it"; and "give it your best show for your best interest." (It appears that the proposed $40,000 payment was expected to go to Pellis for legal fees.) Gibbons went on to express anger regarding both the defendants and Pellis's efforts on the case.

An attorney's acceptance of a settlement offer based upon an erroneous belief that he had the authority to do so conceivably might qualify as excusable neglect. It is not entirely clear to the Court from these e-mails whether Pellis had authority from Gibbons himself to accept the proposed settlement before he communicated acceptance to defense counsel; whether Terri Gibbons's statements gave Pellis the authority to accept the proposed settlement; or, perhaps, whether Gibbons ratified the acceptance. An evidentiary hearing, including testimony, will be required to resolve

11

these issues. Prior to the hearing, defendants must be permitted to review the e-mails that give rise to the dispute regarding acceptance. The Court directs Pellis to produce to defense counsel the following e-mails that were provided to the Court:

- the e-mail from Pellis to Terri dated December 1, 2016 at 4:10 PM, with the subject "RE: Gibbons v. MONY/DMS Litigation – 'Injury' vs. 'Sickness' Nonsense," and the response from Terri to Pellis dated December 5, 2016 at 1:36 PM;

- the e-mail from Pellis to Gibbons and Terri dated January 15, 2017 at 6:35 PM, with the subject "RE: Status Hearing Today (Privileged and Confidential Attorney Client Communications)";

- the e-mail from Gibbons to Pellis and Terri dated January 15, 2017 at 6:29 PM, with the same subject;

- the e-mail from Pellis to Gibbons dated January 16, 2017 at 10:43 AM;

- the e-mail from Terri to Gibbons dated January 19, 2017 at 3:00 PM, in which she forwarded the following communications between her and Pellis:

    - the e-mail from Terri to Pellis dated January 16, 2017 at 2:09 PM, with the subject "RE: Status Hearing Today (Privileged and Confidential Attorney Client Communications)";

    - the e-mail from Pellis to Terri dated January 18, 2017 at 3:27 AM;

    - the e-mail from Terri to Pellis dated January 19, 2017 at 12:59 PM, with the subject "RE: Status Hearing Today (Privileged and Confidential Attorney Client Communications)";

- the e-mail from Gibbons to Pellis dated January 19, 2017 at 11:49 PM, with the same subject.

Pellis is not required to turn over any e-mails that were made available to the Court that are in the same string as the listed e-mails or that were sent prior to or following these specific communications regarding settlement.

### 2. Fraud or misrepresentation

Gibbons also argues that he is entitled to relief from the order enforcing settlement due to fraud, misrepresentation, or misconduct by an opposing party. His

12

argument focuses on the briefs the parties submitted regarding the motion to enforce. Defendants alleged in their motion that Pellis first indicated that Gibbons accepted the settlement and, a few weeks later, said that Gibbons had changed his mind. Defendants also provided the Court with a copy of the e-mail from Pellis to Hartmann in which Pellis stated that Gibbons would accept the offer. In Gibbons's response motion, Pellis affirmed that "he does not contest the facts as presented in" defendants' motion. Gibbons argues that this affirmation "constitutes an illegal disclosure of protected attorney / client communications" and that Hartmann's use of this information constitutes fraud or misconduct. Pl.'s Mot. for Relief from J. at 21–22.

Pellis's statements do not constitute an illegal disclosure of privileged communications. The attorney-client privilege does not extend to communications that were intended to be disclosed to third parties or that the client could not reasonably have believed would be understood by the attorney as confidential. *In re Marriage of Johnson*, 237 Ill. App. 3d 381, 392–93, 604 N.E.2d 387, 386–87 (1992). Gibbons could not reasonably have believed that either his acceptance or rejection of a settlement offer made by defendants was confidential information that Pellis would not relay to defendants' counsel. Therefore Pellis did not disclose privileged communications, and Hartmann's reference to these communications is not fraud or misconduct. The Court denies Gibbons's motion for relief from the order enforcing settlement to the extent it relies on Rule 60(b)(3).

## Conclusion

For the foregoing reasons, the Court denies in part Gibbons's motion for relief from judgment [dkt. no. 128] to the extent he challenges the summary judgment ruling.

The Court also denies Gibbons's motion for relief from the order enforcing settlement to the extent that it is based on fraud or misconduct by an opposing party under Rule 60(b)(3). The Court orders an evidentiary hearing on the remaining issue in the motion, as described in the body of this decision. The evidentiary hearing is set for September 8, 2017 at 1:30 p.m., though the Court reserves the right to move the hearing up to that morning. A status hearing to discuss the evidentiary hearing and the witnesses who will need to appear (likely Gibbons, Terri Gibbons, and Pellis) is set for August 14, 2017 at 9:30 a.m.

                                                            _____
                                                              MATTHEW F. KENNELLY
                                                              United States District Judge

Date: August 9, 2017